UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRUCE A. SUMMERFIELD, on behalf of himself and all others similarly situated, | : | Hon. Joseph H. Rodriguez |
| | : | Civil Action No. 08-1450 |
| Plaintiff, | : | |
| v. | : | MEMORANDUM OPINION & ORDER |
| EQUIFAX INFORMATION SERVICES LLC, | : | |
| Defendant. | : | |

This matter has come before the Court on motion of Plaintiff Bruce A. Summerfield for class certification.  Oral argument was heard on the motion on September 24, 2009, and the record of that proceeding is incorporated here.  For the reasons placed on the record that day, as well as those articulated below, the motion for class certification will be granted.

## BACKGROUND

Plaintiff Bruce A. Summerfield filed a class action Complaint against Defendant Equifax Information Services LLC in this Court on March 21, 2008.  He alleged a violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681i.  Specifically, Plaintiff asserts that Equifax falsely represents to consumers who have disputed the accuracy of public records information reported about them by Equifax that it has directly contacted the original source of the public records.  According to Plaintiff, Equifax does not contact the original source of public records when investigating consumer disputes.  In addition, Plaintiff alleges that if Equifax fails to remove an inaccurate public record from a consumer's credit report, it advises the consumer to take up his dispute with the "source" of the public record, but fails to disclose the true sources of the public records it reports about consumers.

In the named Plaintiff's case, Equifax allegedly reported false information that Plaintiff had an outstanding judgment of $1,075 owed to a collection agency on behalf of AT&T.  In reality, the debt was owed by Plaintiff's son who was serving in Iraq.  On or about February 22, 2007, Plaintiff disputed the inaccurate public record.  On March 2, 2007, Equifax sent Plaintiff correspondence which stated that it had contacted the source of the public record, Camden City, but allegedly "verified" that the inaccurate public record belonged to Plaintiff.  Plaintiff contends that Defendant never contacted the source of the inaccurate public record in response to Plaintiff's dispute.

Plaintiff seeks to have the class certified under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure on behalf of "all consumers in the State of New Jersey to whom, beginning two years prior to the filing of this Complaint and continuing through resolution of this action, in response to a dispute [about the accuracy of a public record Defendant reported], Defendant sent a letter substantially similar to [the one sent to Plaintiff misrepresenting Defendant's reinvestigation activities].

## STANDARD FOR CLASS CERTIFICATION

The proponent of certification bears the burden of proving the requirements of a class action.  Chiang v. Veneman, 385 F.3d 256, 264 (3d Cir. 2004).  Class certification under Rule 23 has two primary components. The party seeking class certification must first establish the four prerequisites of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

2

"If all four requirements of Rule 23(a) are met, a class of one of three types (each with additional requirements) may be certified.  See Fed. R. Civ. P. 23(b)(1)-(3)."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309-10 n.6 (3d Cir. 2008).  In this case, Plaintiff moves for class certification under Rule 23(b)(3), which provides for certification when "the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The twin requirements of Rule 23(b)(3) are known as predominance and superiority."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 310.

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met."  Id. at 309 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)).  To be sure, the issue raised by a Rule 23 motion is whether a class action is an appropriate litigation vehicle, and not the merits of the claims asserted.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974); Chiang, 385 F.3d at 269-70.  However, "[b]ecause the decision whether to certify a class 'requires a thorough examination of the factual and legal allegations,' the court's rigorous analysis may include a 'preliminary inquiry into the merits,' and the court may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'"  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 317 (citations omitted) (quoting Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 259 F.3d 154, 166, 168 (3d Cir. 2001)); see also id. at 319 ("A critical need is to determine how the case will be tried." (quoting Fed. R. Civ. P. 23 adv. comm. note, 2003 Amend.)).

3

Since class certification requires a finding that each of the requirements of Rule 23 has been met, "[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." In re Hydrogen Peroxide Litig., 552 F.3d at 320. "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." Id. "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." Id. at 317. "If a class is certified, 'the text of the order or an incorporated opinion must include: (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified; and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis.'" Id. at 320-21 (quoting Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 187 (3d Cir. 2006)).

## ANALYSIS

The theory of Plaintiff's case seems to be that Defendant violated the Fair Credit Reporting Act by failing to reveal, in a letter to Plaintiff, the identity of one of its public record vendors in its notice of results of reinvestigation it sends consumers. He seeks statutory damages under 15 U.S.C. § 1681(n) in the statutory range of $100 to $1,000 for himself and the putative class of New Jersey residents who received a substantially similar letter. The Complaint also requests punitive damages for the allegedly willful conduct of Defendant in misleading consumers.[1]

---

[1]From the outset, Defendant takes issue with the fact that if putative class members do not opt out of this suit, they will have waived any FCRA claims they may have for negligence or actual damages. (Def. Br., p. 1.)

As a consumer reporting agency, Defendant gathers credit information and stores it in a computer database (Fluellen Decl., ¶ 3, 4.)  With respect to public records such as bankruptcies, liens, and judgments, Defendant contracts with a public records vendor ("PRV") whose employees are specifically trained to gather information relating to court filings.  (DeGrace Decl., ¶ 3.)  The PRV collects this information directly from a "primary source" – the courthouses where judgments, bankruptcies, and liens are filed or from other appropriate electronic databases designated by a court as "official public records."  (DeGrace Decl., ¶ 4.)  From October 2004 through February 2007, the Defendant's PRV was ChoicePoint, Inc.; Defendant's current PRV is LexisNexis.  (DeGrace Decl., ¶ 6, 5.)

Included in Defendant's database is a credit file on Plaintiff.  (Fluellen Decl., ¶ 12.)  In December 2006, ChoicePoint provided information regarding a judgment filed in a Camden court against "Bruce Summerfield."  (Fluellen Decl., ¶ 13.)  Plaintiff claims that the judgment was against his son, Bruce R. Summerfield.  (Summerfield Dep., 59:22-60:3.)  The name and address on the official court record regarding the judgment, however, matched Plaintiff's identification and thus his credit file.  (Fluellen Decl., ¶ 14; Summerfield Dep., 22:12-17, 66:2-67:6.)  Nothing in the court record indicated that the information concerned Plaintiff's son rather than Plaintiff; there was no date of birth or social security number included in the court record.  (Summerfield Dep., 67:7-22.)

On February 22, 2007, Defendant received an on-line dispute on behalf of Plaintiff, sent by Plaintiff's daughter, stating that the judgment "does not belong to Bruce A. Summerfield.  Please remove ASAP."  (Fluellen Decl., ¶ 15; Summerfield Dep., 76:16-19.)  Plaintiff received an online confirmation that his e-mail had been sent.  It read:

> Your online investigation request is awaiting answers from the creditor,
> courthouse, and/or other agency that reported the item originally.

> Equifax verifies all credit account, public record, and collection account information with the original sources when you initiate an investigation. . . .

(Soumilas Cert., Ex. E.)

Defendant advised ChoicePoint that Plaintiff had stated that the item was not his, and asked ChoicePoint to provide complete identification so that Defendant could compare the item to what it had on file.  (Fluellen Decl., ¶ 16.)  On February 28, 2007, ChoicePoint verified to Defendant that the identification matched and that the record was reporting accurately.[2]  (Fluellen Decl., ¶ 16.)  On March 2, 2007, Defendant sent a response to Plaintiff stating,

> Equifax contacted each source directly, and our investigation is now completed.  If you have any additional questions or concerns, please contact the source of that information directly.
>
> *     *     *
>
> Equifax verified that this item belongs to you.  If you have additional questions about this item, please contact: Camden Cty CT, City Hall Room 311, Camden, NJ 08100.[3]

(Fluellen Decl., ¶ 16; Soumilas Cert., Ex. F.)  Defendant does not provide the name and address of its PRV to consumers in responding to disputes because the PRV, as an independent contractor, is merely acting as Defendant's agent for obtaining public records.  (DeGrace Decl., ¶ 14; Klaer Dep., 15:23-16:18, 20:10-20.)

Plaintiff admits that he did not seek credit during the two years preceding the filing of the Complaint, (Summerfield Dep., 70:3-23), and Defendant's records show that the disputed judgment was not included in any credit reports, (Fluellen Decl., ¶ 17).

---

[2]By contract, in response to a verification request that arises from a consumer dispute, Defendant requires the PRV to verify all information from the primary source with a 100% accuracy rate.  (Fluellen Decl., ¶ 11; DeGrace Decl., ¶ 17.)

[3]Plaintiff points out that the actual location in Camden where the judgment was recorded is Superior Court, not Municipal Court, so Plaintiff's contacting any court in City Hall would have proved fruitless in resolving Plaintiff's dispute.  (Soumilas Cert., Ex. G.)

### A. Rule 23(a) Prerequisites

The requirements of numerosity, commonality, typicality, and adequacy of representation "'are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.'" Barnes v. American Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998) (quoting Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994)).  The Court will consider each of these elements in turn.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]"  "'No single magic number exists satisfying the numerosity requirement.'"  Banda v. Corzine, Civil Action No. 07-4508(WJM), 2007 U.S. Dist. LEXIS 80932, at *53, 2007 WL 3243917 (D.N.J. Nov. 1, 2007) (quoting Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989)).  However, the Third Circuit has previously held that the numerosity requirement will generally be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40."  Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Plaintiff has asserted that in discovery responses, Defendant stated that at least 12,516 people received a letter "in form" to Plaintiff's letter after disputing a public record with the Defendant.  (Pl. Br., pp. 3, 15; Def. Br., p. 16, Pl. Reply, p. 3.) Accordingly, the proposed class likely includes several thousand individuals.  Joinder of such a large number of plaintiffs would surely be impracticable.  Numerosity is therefore satisfied, and the defense has not taken issue with the numerosity requirement.

## 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class[.]" To satisfy this requirement, the named plaintiff need only show that he "share[s] at least one question of fact or law with the grievances of the prospective class." Stewart, 275 F.3d at 227 (citation omitted); see also Baby Neal, 43 F.3d at 56 (citation omitted) ("Because the requirement may be satisfied by a single common issue, it is easily met . . . ."). Moreover, commonality does not require that members of the class share identical claims, but that the plaintiff's interests are representative of the absent class members. In re Community Bank of N. Va., 418 F.3d 277, 303 (3d Cir. 2005). Finally, an allegation that the defendants' overall policy injured the plaintiffs satisfies the commonality requirement. See Danvers Motor Co. v. Ford Motor Co., Civil Action No. 02-2197(DMC), 2007 U.S. Dist. LEXIS 7262, at *23-24, 2007 WL 419285 (D.N.J. Jan. 31, 2007).

Here, Summerfield and the unnamed proposed class members' claims involve the same factual and legal theories. They allege that a misleading form disclosure letter was sent following a public records dispute. Thus, all plaintiffs claim that they were injured in substantially the same way by the execution of Defendant's allegedly unlawful policies or practices under similar factual circumstances. For this reason, commonality is satisfied. The Court notes that the defense has not argued against commonality.

## 3. Typicality

"The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members." Stewart, 275 F.3d at 227. "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as

8

guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 157 n.13. The proposed class representatives must "possess the same interest and suffer the same injury as the class members," Falcon, 457 U.S. at 156, but "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." Baby Neal, 43 F.3d at 58. In addition, "[t]his Court . . . has previously rejected the notion that class certification under Rule 23 is 'an all-or-nothing proposition' requiring class certification of all causes of action asserted in a single pleading." Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 544 (D.N.J. 1999) (citation omitted) (finding the typicality requirement satisfied, despite the fact that the named plaintiff brought an individual claim in addition to the claims for which she sought class certification, because there was no indication that her interests failed to align with those of the absent class members). "[T]he threshold for satisfying the typicality prong is a low one." Weisfeld v. Sun Chem. Corp., 210 F.R.D. 136, 140 (D.N.J. 2002).

In this case, Plaintiff alleges that after he disputed a public record appearing on his credit report, he received a form letter from Defendant "containing numerous false and deceptive misrepresentations regarding Equifax's actions in connection with disputes of public records appearing on the Class members' credit reports. The form letter, among other things, erroneously claims that: (1) the "source" of the disputed record was a local courthouse; (2) Equifax contacted that courthouse (the "source") directly itself; (3) the courthouse personnel "reviewed" the disputed record, "conducted

an investigation" and "reported results" back to Equifax; (4) Equifax "verified" that the record belonged to the consumer; and (5) the consumer should contact the courthouse in order to resolve the dispute." (Pl. Br., p. 1.) This claim is the same as those of the absent putative class members because the Fair Credit Reporting Act, 15 U.S.C. § 1681i[4] "requires Equifax to accurately and truthfully disclose to consumers in connection with a dispute of information appearing on their credit report: (1) what Equifax did in connection with the dispute; (2) who is the actual source of the disputed information; and (3) what these entities did in response to the dispute." A significant part of the argument is that not only does Equifax not contact the court to conduct an investigation, but no one from ChoicePoint contacts the courthouse either. (DeGrace Jan. 2009 Dep., 66:8-12; 67:18-25; Fluellen June 2008 Dep., 43:15-19; DeGrace June 2008 Dep., 41:8-22; Fluellen Dec. 2008 Dep., 29:1-4, 37:18-21, 38:25-39:16; DeGrace June 2008 Dep., 83:1-25.) Summerfield's incentives in relation to this claim therefore seem to align with those of the rest of the putative class. Accordingly, the Court concludes that he has satisfied the typicality requirement, which Defendant has not disputed.

---

[4] "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person."

**4. Adequacy of Representation**

The Third Circuit has adopted a two-pronged test for determinating the adequacy of representation by the named plaintiffs and their counsel: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975). "A party challenging the class's representation has the burden to prove that the representation is not adequate." Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 233 (D.N.J. 2005); see also In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 519 (D.N.J. 1997).

Defendant does not challenge the first prong of the adequacy inquiry. Moreover, after considering the submissions in support of the instant motion, the Court has concluded that the proposed class counsel is indeed "qualified, experienced, and generally able to conduct" this litigation.

Defendant does take issue with the named Plaintiff's adequacy of representation because he "(1) had never seen or read the Complaint until Equifax's counsel showed him a copy at his deposition, (2) has no understanding whatsoever of what a class action is, and (3) . . . disagrees with his own counsel's decision to seek only statutory damages under a willfulness theory at the expense of a negligence claim for actual damages for himself and all putative class members." (Def. Br., p. 1. See also Summerfield Dep., 44:3-10; 132:22-133:3; 80:6-14, 110:4-13.)

A class representative's lack of knowledge about his case does not render him an inadequate representative. Surowitz v. Hilton Hotels Corp., 383 U.S. 363 (1966). See also Lewis v. Curtis, 671 F.2d 779, 789 (3d Cir. 1982) (Even where the named plaintiff

11

"displayed a complete ignorance of the facts concerning the transaction he was challenging," the adequacy requirement was met.).  After careful consideration of the record, the Court finds that the named Plaintiff possesses the requisite knowledge about the case such that he can make informed decisions regarding the litigation.  He was able to articulate the basis for the lawsuit, and he has shown commitment to the case.

The more difficult question is whether, by electing not to pursue actual damages, Plaintiff is still an adequate class representative.  The Court has reviewed the myriad of cases from other jurisdictions which have been briefed by the parties, and has found most persuasive the opinion in Chakejian v. Equifax Information Services LLC, 256 F.R.D. 492 (E.D. Pa. 2009).  There, the Honorable Anita B. Brody granted class certification in an almost identical case where the named plaintiff sought only statutory damages, punitive damages, and fees in Pennsylvania under the willful noncompliance section of FCRA, and eschewed any actual damage claim for negligent violations of the Act.  256 F.R.D. 496.  She wrote:

> As pointed out by Chief Judge Easterbrook of the Seventh Circuit Court of Appeals, "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." Murray v. GMAC Mortgage Corporation, 434 F.3d 948, 953 (7th Cir. 2006) (remanding after district court denied certification of a class of consumers who received an allegedly deficient notice under the FCRA).  This is because, to deny class certification on the basis that the plaintiff "should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy," would make consumer class actions under the FCRA effectively "impossible." Id. at 952.

Id. at 499.

In finding that the plaintiff's failure to seek all available remedies in the FCRA class action was not a conflict of interest between the named representative and the other class members, the Judge Brody stressed the availability of the opt-out mechanism for those members of the putative class with claims for actual damages.  Id. at 500.  See also Murray, 434 F.3d at 953 ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently").

Finally, in this case, as was the case in the Eastern District of Pennsylvania, the likelihood of substantial actual damages is almost non-existent.  "Choosing to pursue only statutory damages under 15 U.S.C. § 1681n in cases like these is a litigation strategy that is not the court's place to second guess."  Id. at 499 n.4.  Accordingly, the Court finds that the named Plaintiff does not have an interest antagonistic to the interests of the class.  He is an adequate class representative.

## C. Rule 23(b) Requirements

To be certified, a class must not only satisfy the requirements of Rule 23(a), but must also demonstrate that the action is maintainable under Rule 23(b)(1), (2), or (3). Amchem Prods. v. Windsor, 521 U.S. 591, 613 (1997).  As stated above, Plaintiff seeks class certification under Rule 23(b)(3), which provides for certification when

> the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  Class certification under this provision must satisfy the twin requirements of predominance and superiority.  Newton, 259 F.3d at 186.  Each will be discussed in turn.

13

## 1.  Predominance

With regard to predominance, the Third Circuit has explained,

Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim.  Issues common to the class must predominate over individual issues.  Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.  If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 310-11 (internal citations and quotations omitted).  Thus, the court must "examine the elements of plaintiffs' claim through the prism of Rule 23" to determine whether predominance is established.  Id. at 311.  Plaintiffs must demonstrate that the elements of their case are "capable of proof at trial through evidence that is common to the class rather than individual to its members."  Id.

The predominance element incorporates, but is more demanding than, the commonality requirement of Rule 23(a).  In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir. 2004).   The inquiry "focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication."  Cannon, 184 F.R.D. at 545 (citation omitted).  "That common issues must be shown to 'predominate' does not mean that individual issue[s] need be non-existent.  All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other."  Id. (citation omitted).

Defendant argues that the questions of "(1) whether [Defendant's] conduct as to each class member was willful and (2) issues concerning statutory and punitive damages" predominate over any common issues in this case.

To show willful noncompliance with the FCRA, a plaintiff must demonstrate that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." Cushman v. Trans Union Corp., 115 F.3d 220, 227 (3d Cir. 1997) (holding that to justify an award of punitive damages under 15 U.S.C. § 1681n, the defendant's actions must "be on the same order as willful concealments or misrepresentations") (citations omitted). Thus, the claim will focus on Defendant's policies and procedures with respect to issuing reinvestigation letters, and whether Defendant knew, or consciously disregarded, that the form letters were false or misleading in violation of FCRA. As such, although willfulness is necessarily a fact-bound inquiry, individual issues will not predominate because the Defendant's conduct was consistent with its own policy and practice from one consumer to the next. This case is readily distinguishable from Nafar v. Hollywood Tanning Systems, Inc., No. 08-3994, 2009 WL 2386666, *7 (3d Cir. Aug. 5, 2009) (finding "individual issues regarding plaintiff's behavior may, in certain cases, defeat predominance in a NJCFA class action, despite the uniformity of a defendant's misrepresentations or omissions"), because Plaintiffs here are merely recipients of the form letter. Nothing about Plaintiffs' behavior or conduct impacts the case; it is Defendant's actions that are judged.

Further, "[g]iven the nature of [P]laintiff's claims, this is not a case in which the amount of the damage award is likely to differ from consumer to consumer, particularly in view of the plaintiffs' decision not to pursue actual damages." Chakejian, 256 F.R.D. at 501. The proposed class is sufficiently cohesive to meet the predominance requirement.

**2. Superiority**

The superiority analysis focuses on whether a class action is the best method for achieving a fair and efficient adjudication.  Newton, 259 F.3d at 186.  To this end, Rule 23(b)(3) provides a non-exhaustive list of several factors to help determine whether a class action is the superior method of adjudication:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

It appears that putative class members would have little interest in pursuing individual claims against Defendants.  "It is generally recognized that class certification is preferred where 'the recovery being sought by each of the plaintiffs is not sufficiently large to render individualized litigation a realistic possibility.'" Cannon, 184 F.R.D. at 546 (quoting In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 351 (D.N.J. 1997) (in turn citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985))).  Plaintiff has sought statutory damages under FCRA in the range of $100 to $1,000.  Given the relatively small economic stake that any one class member has in this case, the first factor favors class treatment.  See Murray, 434 F.3d at 953 ("Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether.").

16

Defendant has argued that "the fee-shifting provision of the FCRA provides sufficient incentive for an individual to pursue" negligence and actual damage claims against the Defendant. (Def. Br., p. 2.) "These financial incentives might not encourage each putative class member to bring suit, but they dispel the notion that a class action is the only way to adjudicate the lawfulness of the defendant's practices." Klotz v. Trans Union, LLC, 246 F.R.D. 208, 217 (E.D. Pa. 2007). Still, class actions have not been foreclosed merely by the presence of a fee shifting provision.

In this case, not only is the potential individual recovery small, but as discussed during oral argument, "meaningful enforcement of the statute through individual consumer litigation is unlikely." Chakejian, 256 F.R.D. at 501. Regarding Defendant's argument that it faces a "super penalty" because it could potentially be liable for $12 million without any proof of harm, merely for a technical violation of FCRA, it appears that Defendant's argument is with Congress, who enacted the statute. See Murray, 434 F.3d at 953 (observing that many laws that authorize statutory damages also limit the aggregate award to any class, but FCRA does not). In addition, "class certification is not the stage at which due process concerns should be addressed, or anticipated." Chakejian, 256 F.R.D. at 502 (citing Parker v. Time Warner Entertainment Co., LP, 331 F.3d 13, 22 (2d Cir. 2003).

The second factor also favors class certification. The Court is unaware of any other FCRA litigation pending against the Defendant by the potential class members in New Jersey. The third factor favors certification because it is generally "desirable to litigate similar, related claims in one forum." Cannon, 184 F.R.D. at 546 (citation omitted). Lastly, the Court has no reason to believe there will be any difficulty in managing this case. Therefore, the fourth factor also points to the superiority of class treatment in this case.

**C.  Class Definition**

Defendant has argued that due to reference to a "substantially similar" letter to that which the Plaintiff received, the proposed class is not objectively ascertainable, as the proposed class definition "requires individual fact-finding just to determine class membership." (Def. Br., p. 2.) "[D]efining a class by reference to a standardized letter does not require an individual evaluation of the claims, and courts have had no difficulty in certifying consumer classes based upon similar language." Chakejian, 256 F.R.D. at 497 (citations omitted).  Nonetheless, as Judge Brody did in Pennsylvania, this Court will redefine the class to reflect that Defendant issues the form reinvestigation letter in the case of public records disputes only.  Therefore, the class is defined as:

All consumers in the State of New Jersey to whom, beginning two years prior to the filing of this Complaint and continuing through resolution of this action, in response to a dispute about the accuracy of a public record that Defendant reported (including, but not limited to bankruptcies, liens, or judgments), Defendant sent a letter substantially similar to the Letter attached to the Complaint as Exhibit A.

**D. Notice to Potential Class Members**

Federal Rule of Civil Procedure 23(c)(2)(B) provides that, in any class action maintained under Rule 23(b)(3), notice shall be given to the class in the best practicable manner.  Plaintiff should submit a proposed form of notice to the class within 30 days.

**E. Appointment of Class Counsel**

Rule 23(g)(1) requires the Court to appoint class counsel.  As previously discussed, the Court finds that Plaintiff's counsel is "qualified, experienced, and generally able to conduct the proposed litigation," Wetzel, 508 F.2d at 247.  The Court will therefore appoint them as class counsel.

## **CONCLUSION**

For these reasons, as well as those placed on the record during oral argument on September 24, 2009,

IT IS ORDERED on this 30th day of September, 2009 that Plaintiff's motion for class certification **[29]** is hereby GRANTED.

IT IS FURTHER ORDERED, upon consideration of the unopposed motion of Defendant Equifax Information Services, LLC to file a document under seal [33]; and

The Court finding that Exhibit 1 to Shawn DeGrace's Declaration, attached as Exhibit B to Equifax's Response in Opposition to Plaintiff's Motion for Class Certification, contains sensitive business information that would place Equifax at a competitive disadvantage in the industry if not filed under seal; and

The Court having further found that no reasonable alternative to filing this document under seal exists as Equifax relies upon this document in its Response in Opposition to Plaintiff's Motion for Class Certification; and

For good cause shown,

The unopposed motion of Defendant Equifax Information Services, LLC to file a document under seal **[33]** is hereby **GRANTED**:  Equifax's Exhibit 1 to Exhibit B attached to its Response in Opposition to Plaintiff's Motion for Class Certification is to be FILED UNDER SEAL.


                                        /s/ Joseph H. Rodriguez
                                        JOSEPH H. RODRIGUEZ
                                        U.S.D.J.